IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HUONG THI NGUYEN,

       Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

_____

Case No. 3:15-cv-00681-TC

OPINION  AND  ORDER

COFFIN, Magistrate Judge:

    Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's application for disability insurance benefits.

    Plaintiff asserts disability beginning February 28, 2010, due to frozen right shoulder; pain and weakness in shoulder, arms and fingers; spinal impingement; weakness and pain in both knees; and left arm pain and numbness with restricted movement.  After a hearing, an administrative law

Page 1 - OPINION AND ORDER

judge (ALJ) determined that plaintiff is not disabled. Plaintiff contends the ALJ erred in his determination that plaintiff was not fully credible and by failing to determine plaintiff's residual functional capacity by improperly rejecting limitations in the ability to reach and manipulate.

## A. Credibility

Plaintiff testified, with the assistance of a translator, that she was 62 years old at the September 3, 2013 hearing. Tr. 32. She stopped working in January or February 2010, following surgery on her cervical spine, including an anterior cervical diskectomy, osteophytectomy, and bilateral foraminal decompression at C5-6. Tr. *Id.,* 359-60. She worked as a hairdresser and as a dental ceramic assistant. Tr. 32-33. Plaintiff's doctor advised her to stay off work for one year after surgery, but after the year it hurt to bend her neck. Tr. 34. She tried to return to work as a hairdresser but was unable to do the work due to pain in her arms. Plaintiff testified she cannot return to her work in the dental lab because it requires repeated movement of her arms and hands. *Id.* The dental lab job required constant use of her hands.

Plaintiff has pain when she bends her head up or down, and a tingly sensation in both hands. When she had surgery the radiating pain was only in her right arm, but about a year after surgery she developed pain in the left arm. Tr. 37. She had an injection in her arm that helped temporarily. Plaintiff has pain and numbness from her fingers to her elbows, and her fingers get numb and stiff. Tr. 37-38. It is difficult to use her hands, and she drops things. Plaintiff's neck hurts when she bends it up or down. She sleeps two to three hours at night and is tired during the day. Tr. 39.

The ALJ found plaintiff not fully credible:

> The medical record does not support the claimant's allegations of disability. For example, treatment notes dated December 2009, which is two months prior to her alleged onset date, she reported obtaining some relief from

Page 2 - OPINION AND ORDER

physical therapy and a recent epidural steroid injection. (Exhibit 2F/18). While she was not completely pain-free, she was "much better." She had some pain at the extremes of abduction and forward flexion, but the overall pain had improved. Upon examination, she was not tender in the AC joint or greater tuberosity. She showed "very good" rotator strength against resistance. Additionally, she had "good" motion with internal rotation. Based on the examination, Robert E. Tennant, M.D., assessed her with "improving" impingement syndrome. This note predates the claimant's alleged onset date. However, the record does not include objective medical evidence showing a worsening of her shoulder since that time.

As stated above, the claimant [had] surgery on her cervical spine in February 2010. According to a follow-up note dated approximately one month later, she report[ed] a resolution of right arm pain, numbness and weakness postoperatively. (Exhibit 2F/6). However, she also reported having shoulder and mid back pain. For treatment, Donald Mulconrey, PA-C, added a pre-scription for Norco to the claimant's medication regime, which already included Tylenol, Tranxene, and Advil.

According to a follow-up note dated in May 2010, the claimant reported having pain in her right shoulder and some residual pain in her neck. (Exhibit 2F/3-4). She also reported that the numbness in her right hand had partially returned. Upon examination, she exhibited diminished rapid alternating movements in her right hand. The range of motion in her cervical spine was "only slightly restricted." She had full strength with right-sided shoulder abduction, biceps, wrist flexion and extension, grip, and finger extension, abduction, and adduction. For treatment, Daniel C. Rohrer, MD, prescribed a Medrol Dosepak and instructed the claimant she could resume her right-shoulder exercise program.

The claimant saw Dr. Rohrer again in August 2010. At that time, she reported that her overall pain control was good, as her neck pain resolved, and her arm symptoms continued to improve. (Exhibit 2F/1). Upon exami-nation, her strength and rapid alternating movements in both upper extremi-ties appeared to be intact. Based on the claimant's objective presentation, Dr. Rohrer stated she "continues to recover well. She will advance her home exercise program." He planned to have her follow up in six months.

. . .

In November 2012, the claimant presented with complaints of left-sided arm and shoulder pain. (Exhibit 9F/1-2). Upon examination, she showed a limited range of motion in her scapular components. Based on the examina-

Page 3 - OPINION AND ORDER

tion, the treatment provider (signature illegible) suspected either a rotator cuff tear or subacromial bursitis. The provider offered to administer a cortisone injection, which the claimant declined. Accordingly, the provider advised her regarding Ibuprofen and gave her a handout regarding home exercises.

According to the claimant's testimony, she currently used over-the-counter pain relievers, such as Advil and Tylenol. She stated she received a prescription from a community clinic, but she does not remember the name of the medicine. Regarding her post-surgery activities, she stated she collected unemployment benefits after February 2010. At that time, she was looking for work in restaurants and local small businesses.

Upon review of the longitudinal medical record, including the multiple imaging studies, the February 2010 operative report, the post-surgery examinations, and the claimant's current use of only over-the-counter medications, the undersigned finds strong persuasive evidence that the claimant's allegedly disabling impairments improved with treatment, and any residual symptoms are not so persistent or severe as to preclude her from all work activity.

Tr. 17-18.

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Circ. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, '" the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific,

clear and convincing reasons for doing so.'" *Lingenfelter,* 504 F.3d at 1036 (quoting *Smolen,* 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995)(citing *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991)(*en banc*)).

The ALJ found plaintiff's credibility regarding her symptoms not supported by the medical record, noting the December 2009 notes from Dr. Tennant. As set out above, the ALJ found "no objective medical evidence" documenting any worsening of her right shoulder condition. Tr. 17. However, a January 2010 MRI, obtained for "right arm pain with C5 radiculopathy"showed "marked spinal stenosis at the C5-6 disc level which is secondary to posterior disc protrusion and bony bar formation, in addition to uncovertebral joint hypertrophic changes." Tr. 368. The MRI indicated the C6 nerve root sleeves do not fill well and root irritation is "likely." *Id.* Plaintiff had mild degenerative disc disease with left-sided lateral recess stenosis at C4-5 with reduced filling of the left C5 root sleeve.

On February 22, 2010, Dr. Rohrer found plaintiff's muscle strength at 5/5 in most measurements, with a diminished range of motion of the right shoulder. Tr. 365. Two years later Tatsuro Ogisu, M.D., found muscle strength decreased to 4/5 in almost all measurements. Tr. 481.

The ALJ found plaintiff complained of left-sided arm and shoulder pain in November 2012. However, plaintiff actually complained in June 2012 of left shoulder pain radiating to her hand, of five month duration, with pain at 7/8 out of 10 with numbness and tingling in her fingertips. Tr.

Page 5 - OPINION AND ORDER

489.  Osteoarthritis or rotator cuff sprain was suspected.  She had a reduced range of motion and decreased strength.  By August 2012 left biceps tendonitis with a limited range of motion was diagnosed, and plaintiff received a cortisone injection.  Tr.  487, 486.  Plaintiff had decreased strength and limited range of motion in the left upper extremity, particularly with shoulder extension and abduction.  Tr. 488.  She reported increased left shoulder pain radiating to her elbow.  Pain was 4 out of 10 at rest and up to 10 out of 10 at night.  Plaintiff reported the pain interfered with sleep, buckling a seatbelt, and putting on a shirt.  Tr. 487.

The medical record supports plaintiff's assertions of limited range of motion and pain in both arms and hands.  Accordingly the medical record is not a clear and convincing reason to find plaintiff less than fully credible.

The ALJ cited plaintiff's use of over the counter medications as indicating she was less than fully credible regarding her symptoms.  Evidence of conservative treatment can be a valid reason to find a claimant less than fully credible unless the claimant has an explanation.  *Carmickle v. Comm'r Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008).  Plaintiff testified that she received treatment at a clinic for uninsured people.  Tr. 37.  The claimant's conservative treatment is not a clear or convincing reason to find her less than fully credible.

Plaintiff's credibility is supported by her earning records indicating she was substantially gainfully employed for thirty years.  Tr. 168.   The ALJ failed to identify clear and convincing reasons to find plaintiff less than fully credible.  On this record, the ALJ's determination regarding credibility is not supported by substantial evidence.

B. The Residual Functional Capacity Assessment

The ALJ found plaintiff retained the ability to perform light work, except she cannot climb ladders, ropes, or scaffolds. She can occasionally crawl. She can occasionally reach overhead, with reaching in all other directions limited to frequently. She can frequently handle. Tr. 16. The ALJ found plaintiff was able to return to her prior employment at step four of the sequential analysis, and therefore did not proceed to step five to determine whether she had transferable skills and could perform other work in the national economy.

When plaintiff's testimony regarding her pain and numbness in her arms and hands is credited, the ALJ's residual functional capacity analysis is not supported by substantial evidence.

C. The Medical Vocational Guidelines

Plaintiff contends remand for an award of benefits is appropriate because she meets the criteria of the Medical Vocational Guidelines (the grids) at 20 C.F.R. § 404, Subpt. P, App'x 2 § 202.06. The grids direct a finding of disability when a claimant meets a specific profile considering their age, education, work experience, and residual functional capacity. An individual age 55 or older, limited to a light residual functional capacity, who cannot perform her past relevant work, is disabled if she does not have skills "that are not readily transferable to a significant range of semi-skilled or skilled work. . . ." Grid Rule 202.00(c). The ALJ found plaintiff capable of light work, and she does not contest that.

Because the ALJ found plaintiff not fully credible regarding her symptoms, he determined she was able to return to her past relevant work, and therefore made no findings as to whether plaintiff has skills readily transferable to a significant range of work.

REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ's rejection of plaintiff's testimony is erroneous for the reasons set out above. There is no evidence as to whether plaintiff possesses skills transferable to a significant range of semi-

Page 8 - OPINION AND ORDER

skilled or skilled work that is within her functional capacity. Therefore, outstanding issues must be resolved before a determination of disability can be made.

Accordingly, this matter is remanded pursuant to Sentence 4 of 42 U.S.C. § 405(g) for further proceedings in accordance with this Opinion and Order.

IT IS SO ORDERED.

Dated this $\underline{20^{t}}$ day of March, 2016.

Thomas M. Coffin
United States Magistrate Judge

Page 9 - OPINION AND ORDER